IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:10CR190 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| DOMINIQUE BENNETT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This memorandum supplements findings made on the record at a sentencing hearing on January 10, 2011. The defendant was charged on May 18, 2010, with possession with intent to distribute more than 5 grams of crack cocaine. Filing No. 1, Indictment.

On October 8, 2010, pursuant to a plea agreement, the defendant entered a plea of guilty to the charge. Filing No. 27, Plea Agreement; Filing No. 29, text minute entry. In the plea agreement, the parties agreed that Bennett should be held responsible for more than 20 grams but less than 35 grams of crack cocaine, which results in a base offense level of 26, and the government agreed that if the defendant complied with subparagraphs (1) and (5) of 18 U.S.C. § 3553(f), his offense level should be reduced by two levels under U.S.S.G. § 2D1.1(b)(11) (the "safety valve"). *Id.* at 2-3. The parties further agreed that the defendant was not subject to an upward or downward adjustment for role in the offense. *Id.* at 3. The court accepted the defendant's plea but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that

calculated the defendant's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 29, text minute entry.

In the PSR, the Probation Office identified U.S.S.G. § 2D1.1 as the applicable Guidelines base offense level provision and determined that, based on a quantity determination of more than 20 but less than 35 grams of crack cocaine, the defendant's base offense level should be 26.  Filing No. 53, PSR (sealed) at 7-8.  It subtracted two levels under the safety valve, U.S.S.G. § 5C1.2, resulting in an adjusted offense level of 24.  *Id.* at 8.  After deduction of three levels for the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1 (a) & (b), the defendant's total offense level was 21.  *Id.* at 8.  The defendant was assessed no criminal history points and his criminal history category was I.  At criminal history category I and offense level 21, the defendant's sentencing range under the Guidelines is 37 to 46 months.  *Id.* at 23.

The following facts are set out in the PSR.  *See id.* at 5.  On March 26, 2010, a search was executed by Omaha police officers, pursuant to a warrant, at Bennett's residence.  *Id.* at 5.  Approximately 32.1 grams of crack cocaine, other drugs, and drug paraphernalia were found there.  *Id.* at 6.  The defendant admitted to the Probation Officer that he had been selling drugs for six months, but that he had done so to support his family, pay child support, pay bills, and help his mother.  *Id.* at 6.  He admits this was the "biggest mistake of [his] life."  *Id.* at 6.

Bennett is twenty-six years old.  *Id.* at 2.  He was raised by his mother and grandmother in Arkansas and Mississippi, before moving to Omaha at age 11.  *Id.* at 11.  He was removed from his mother's home due to her drug addiction, and his grandmother had a history of alcohol abuse.  *Id.*  He began using marijuana heavily at age 16 and last

used the drug in June 2010.  *Id.* at 13.  He also smoked marijuana laced with cocaine for six years prior to his arrest.  *Id.* at 13.  He admitted that smoking marijuana took over his life and made him "apathetic and stuck in life."  *Id.* at 12.  Bennet has been involved with a woman who has four children for two years and has one child from a previous relationship.  *Id.* at 12.  He has been steadily employed for most of his adult life.  *Id.* at 15.

Mr. Bennett commenced treatment through the Hero Program at the Stephen Center in Omaha, Nebraska, on July 8, 2010.  Bennett completed the Short-Term Residential Phase (Phase I) on August 25, 2010, and progressed to Phase II, which is a 16-week intensive outpatient program.  At the time of sentencing he had completed 14 weeks of Phase II, had not had any positive urinalyses since his initial test, was gainfully employed at West Telemarketing, was working on his GED, and expects to complete Phase II of the program in the Spring of 2011.  *See id.*; Filing No. 52, Release Status Report (sealed) at 1-2.

## DISCUSSION

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened.  *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007).  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'"  *Kimbrough,* 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).  In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including

3

the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See*, e.g., *Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States,* 129 S. Ct. 890, 891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

The Guidelines remain "the starting point and the initial benchmark" in determining a sentence. *Gall,* 552 U.S. at 49. However, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Id.* at 50; *Nelson,* 129 S. Ct. at 892 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable") (emphasis in original). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson,* 129 S. Ct. at 891-92.

## ANALYSIS

### 1. Initial Guidelines Calculation

The court generally accepts the facts set forth in the PSR and finds the defendant's offense level is 21 and his criminal history category is I.

### 2. Departure

For the reasons discussed below in connection with a sentence outside the Guidelines, the court finds that the defendant's motion for a downward departure should

be granted. The court finds the defendant's rehabilitation is exceptional enough to be atypical.

### 3. Section 3553 factors

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the court finds that a sentence of 24 months is sufficient, but not greater than necessary to accomplish the goals of sentencing. The court will accordingly grant the defendant's motion for a sentence outside the Guidelines.

With respect to the nature of the offense, the court notes that distribution of crack cocaine is undoubtedly a serious offense. However, Bennett was involved in drug trafficking for only a short time. Although he possessed a significant quantity of crack cocaine, the quantity determination does not serve as a reliable proxy for culpability in view of the short duration of Bennett's involvement in drug trafficking. Moreover, the recent statutory and Guidelines changes in crack penalties reflect the view that the former 100-to-1 crack/powder cocaine ratio produced disproportionately harsh sanctions on crack traffickers. These events show that crack crimes are now perceived as less serious than they had been under the former regime.

The court has also considered the history and characteristics of the defendant. The court has taken into account the defendant's minimal criminal record and his compliance on pretrial release. Bennett is a 25-year-old man with a steady working history who is nearing completion of his GED. He had considerable hardship in his life and most of his problems are linked to drug and alcohol addiction. Bennett's rehabilitation is relevant to the determination of a reasonable sentence under § 3553(a) in that it relates to his history and characteristics.

The evidence establishes that Bennett's post-offense rehabilitation has been extraordinary. Not all defendants who are provided the option of chemical dependency treatment take advantage of the opportunity to the extent that this defendant has. It is not common for a drug offender with a significant history of drug abuse to successfully complete a drug treatment program as demanding and rigorous as the one that Bennett is completing. The court appreciates the difficulty of a defendant's overcoming a long-standing addiction and the court can envision a positive result for Bennett. The court believes that Bennett has accepted responsibility for his actions and his intentions to turn his life around are sincere. The court finds that Bennett's efforts at recovery and rehabilitation are atypical and exceptional.

This sentence also satisfies the need to provide needed educational or vocational training, medical care, and other correctional treatment in the most effective manner by allowing the defendant to complete his treatment program before serving his sentence. Further, this sentence allows the defendant the benefit of his completion of a lengthy program of treatment. Because the defendant has been drug-free for an extended period and has been provided treatment, he would not be eligible for the Bureau of Prisons residential drug abuse program ("RDAP"). Generally, an inmate who completes that program gets the benefit of a year of credit against his sentence. The defendant has effectively completed such a program at this point and should be afforded a similar benefit for his efforts. Accordingly, the court finds a sentence of 24 months is appropriate in this case.

In formulating this sentence, the court has considered the sentencing range established by the Guidelines, but, because the drug offense Guidelines were promulgated

pursuant to Congressional directive rather than by application of the Sentencing Commission's unique area of expertise, the court affords them less deference than it would to empirically-grounded Guidelines.  *See Kimbrough*, 552 U.S. at 108-109.  Also, the Guidelines calculation is driven by drug quantity which is not always a trustworthy measure of the culpability of an individual defendant.

This sentence also satisfies the purposes of sentencing.  The court finds that a sentence including some period of incarceration is necessary to achieve the goals of sentencing and to establish some level of proportionality with respect to other drug-trafficking crimes and to reduce the perception of unwarranted disparity.  A sentence of 24 months reflects the seriousness of the offense, promotes respect for the law and provides just punishment.  This is a significant sentence for a first-time offender.  A sentence of 24 months for this sort of crime will enhance the public's confidence in the criminal justice system.  The defendant has already suffered serious consequences of his crime.  These factors, along with a significant term of imprisonment, will deter others from engaging in similar criminal conduct.  The value of any additional prison time as a deterrent would be marginal.

The court finds that the defendant is unlikely to reoffend, so this sentence is more than sufficient to protect the public from further crimes.  Because the defendant is successfully completing a rigorous treatment program, there will be less need to protect the public from any future crimes.  The need to protect society from further crimes of the defendant is also accounted for in the court's imposition of a term of supervised release with stringent conditions.

A Judgment and Commitment and a Statement of Reasons in conformity with this Sentencing Memorandum will issue this date.

DATED this 1st day of February, 2011.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.